MEEK & CO. vs. BLACK, et al.

1. Accommodation endorsers occupy, as to the drawer of a note, the situation of sureties.
2. Where one, of two accommodation endorsors of a promissory note, discounted in Bank, received the amount from the maker, and failed to apply it, so that the other endorser was compelled to pay——held,

   1. That payment to one endorser, was not a payment to both, *as joint payees.*

   2. That the endorser receiving the payment, being the confidential agent of the maker, bound the latter, by his omission; and that the maker was bound to refund to the other endorser, the amount paid by him on the judgment obtained on said note.

Error, from a decree in Chancery, in Tuskaloosa County.

The bill in this case was filed by James Meek, John Meek and Samuel M. Meek, then lately merchants and copartners in trade. It set forth, that on or about the 22d day of September, 1826, the complainants appointed William Hilliard, late of Richland, in the State of South Carolina, their agent, for the purpose of procuring money for the complainants, at the Branch Bank of the State of South Carolina; and to effect which, the complainants executed a promissory note, for the sum of three hundred and seventy five dollars, payable sixty days after date, to the order of James Black: which note was endorsed by the said Black and Hilliard; discounted by the Bank and the money received by the defendants for complainants' use. That when the said note became due, from the neglect of said Hilliard, the same was protested for non-payment; and a suit

commenced against said Black and Hilliard, as endorsers, by the Bank: and that, subsequently, judgment was had against them for the amounts of said note, costs, &c. That in order to pay off and discharge the same, John Meek, one of the complainants, remitted to Hilliard, a sum of money, equal to the amount of said judgment, and directed him to discharge the same: that at the time of the remittance of the said money, and the receipt thereof by Hilliard, the latter was the sheriff of Richland District, and the said Black one of his sureties; which situations they severally held until 1829. That said Hilliard, as sheriff of the aforesaid district, had in his hands an execution issued on the aforesaid judgment; and that after the reception of the money remitted to discharge it, he, Hilliard, informed the said John Meek, that he had discharged the said judgment with the said money, so remitted, as aforesaid: and that afterwards, the said Hilliard, as sheriff, executed a receipt for the amount of said judgment, acknowledging, that on or about July, 1827, he received the same from the complainants, by letter.

The bill further charged, that the complainants remained secure, during a long period, that the said judgment had been discharged and satisfied, until informed by Black, that the said Hilliard had not paid the same; but had become insolvent, and had left the State: and that, then, the said Black urged the said complainants to satisfy the same. That, notwithstanding the said Black well knew of the payment of the said money to Hilliard, he subsequently, and with a full knowledge of all the facts and circumstances of said payment, voluntarily, and in his

own wrong, did again pay off, and discharge the same: that he afterwards had wrongfully commenced suit against the complainants, in the County Court of Tuskaloosa, and recovered a judgment thereon; and was then proceeding to enforce the collection of it by execution.

The complainants further alleged, that they were unable to resist the aforesaid recovery at law, because the knowledge of these transactions were alone within the breast of Black. Also, because one Guignard, whom they had examined on deposition, taken in the suit at law, and by whom they expected to prove the material facts connected with the payment to Hilliard, had failed in making such proof; and which they, (the complainants,) did not know, until the depositions were opened, on the day of trial.— And further, that they had endeavored to procure a continuance, and new trial of the case at law, so as take advantage of the testimony of Hilliard, whose place of residence the complainants had unsuccessfully endeavored to ascertain; but that they, the complainants had failed in these efforts; and that, accordingly, the law judgment had been rendered against them. They, therefore prayed for an injunction and other relief, as usual in such cases.

Black filed his answer, in which he averred, that on or about the 22d September, 1826, Hilliard, acting as agent of the complainants, for the purpose of procuring money for them, executed the promissory note alluded to in the bill, which was endorsed by the respondent, as alleged. The note, being discounted, was, through the neglect of Hilliard, protested for non-payment; and a judgment for the amount

thereof, rendered in favor of the bank. He denied that it was within his knowledge, that John Meek had transmitted funds to Hilliard, for the purpose of discharging the said judgment; or that he was the surety of Hilliard. Confessed that Hilliard was sheriff of Richland District, and so continued for a long period; until he subsequently absconded from the State: and acknowledged his belief, that the execution, issued on the aforesaid judgment, was lodged in the sheriff's office, as charged in the bill; but insisted that this was illegal, in as much as said Hilliard was a party defendant. He further denied that said execution was ever satisfied by said Hilliard; but averred, that Hilliard had forwarded the receipt set forth in the bill, to Meek, after he had left the office of sheriff: denied that John Meek had ever informed the respondent, that he had sent the amount of the judgment to Hilliard; but stated, that Samuel M. Meek, before judgment was obtained on the note, wrote to the respondent, that John Meek had remitted money for that purpose, and that Hilliard had written he would apply it accordingly. He, therefore, averred, that the money, if received by Hilliard, in any event, was not so received, while sheriff of the District. He also affirmed, that he had not paid the said judgment; until called on to do so, under execution, and threatened with a levy upon his property: and that, after having discharged the amount, as he was bound to do, he called upon the complainants to refund the amount, before suit. Respondent denied that Hilliard ever informed him of the payment of the judgment; all confederacy, &c., and prayed a dissolution of the injunction.

4 s & p.          48

William Hilliard answered to the following effect: He was the agent of James Meek & Co., and did negotiate the note, as charged in the bill. When the note became due, not being authorised to sign the complainants' names to a new note, it was protested for non-payment—subsequently sued, and judgment rendered against Black and the respondent, for its amount. Execution being issued regularly, and lodged in his office—previous to his leaving the office of sheriff, the full amount was paid to him, by John Meek : and while such sheriff, he receipted for the same to the complainants. He averred, that the money was received by him, while in the discharge of his duties as sheriff; and that the execution had been duly lodged with him, for collection : that he informed Black of the said payment, by the complainants; but whether Black had paid the amount he did not know, &c.

At March term, 1832, the cause coming on to be heard on the bill and answer ; and with the agreement of Black, one of the defendants, that the answer of Hilliard, if, in the opinion of the Court, admissible as such, should be evidence in the cause— the presiding Chancellor rendered a decree, dismissing the bill, as to Black : and decreeing against Hilliard, in favor of the complainants, for the amount received by him. The complainants, from this decree, prosecuted a writ of error ; and insisred, for a reversal, on the grounds—

1st. That the evidence of Hilliard was good and competent against Black.

2dly. That the payment to Hilliard, discharged

their obligation to Black and Hilliard, which was an obligation to them jointly.

3dly. That the receipt given by the sheriff, was a satisfaction of the judgment; and that Black, if he paid it at all, paid it a second time in his own wrong, with notice that it had been previously satisfied.

*Stewart* and *Wilson*, for plaintiffs in error.
*Ellis*, contra.

TAYLOR, J.—The bill itself, in this case, shows, that the note executed by the complainants, to Black and Hilliard, was made with the intention of having it discounted in Bank, for the accommodation of the drawers; that it was so discounted, and the money paid over to the complainants.

It would be unnecessary to adduce authorities, to show, that accommodation indorsers occupy, as to the drawer of a note, the situation of securities.— Black and Hilliard were securities to the Bank for the complainants as much as if they had executed the note as such. Although as to the Bank, or strangers, who might have become holders of the note, the parties bore the characters of drawers and indorsers, yet, with each other, they stood as principal and securities. One of these securities had acted as the agent of the complainants, in getting the other to indorse the note; in having it discounted in Bank, and in drawing the mony from the Bank, and applying it according to the directions of his principal. At the time the money was remitted by the complainants, to pay the debt thus contracted, it is evident there had not been a judgment recovered against the in-

MEEK & CO. *vs.* BLACK, et al.

dorsers. The receipt which was given for the money, by Hilliard, was, as appears from its face, executed some considerable time subsequent to the receipt of the money; and from comparing that receipt with the judgment, it appears, that the money came to Hilliard's hands, two or three months before the judgment was recovered. The money, therefore, could not have been received by Hilliard, as sheriff, in discharge of the execution; and his making the receipt as sheriff, is an evident attempt to substitute himself officially, as a debtor to the plaintiffs, in the judgment, instead of himself and Black, who stood as judgment debtors. This he could not legally do.

It is further objected to the judgment below, that Black and Hilliard occupied the position of joint payees, and that payment to one, amounted to payment to both.

It is believed, however, that their situation was altogether different from that of joint holders. The debt had, in fact, been contracted to the Bank, in the first instance; no liability had ever existed from the plaintiffs to the indorsers. Suppose Black and Hilliard, instead of getting the note discounted, had sued the plaintiffs on it; they certainly could not have recovered. Or suppose the plaintiffs had paid them, jointly, the amount of the debt; would that have prevented the liability of the plaintiffs to the Bank? Surely not. The indorsers had no claim upon the makers at the time the money was remitted to Hilliard; therefore, it could not operate as a payment to Black and Hilliard, jointly.

It is the plain and irresistible inference, however, from all the facts, that this money was remitted to

MEEK & CO. *vs.* BLACK, et al.

Hilliard as the confidential friend and agent of the plaintiffs. From the answer of Hilliard, it appears, that the plaintiffs had left a blank note, signed by them, in his hands, which he had filled up, got indorsed, and presented to the Bank, for discount.— And the presumption is great from the whole answer, that his agency was by no means confined to this transaction. But whether it was or not, in this instance, the plaintiffs confided in Hilliard, and if he abused that confidence, Black can not be made a sufferer by it; but the loss must fall upon the trusting party.

As this point disposes of the case, it is unnecessary to consider any other.

The judgment is affirmed.